**UNITED STATES DISTRICT COURT**
**DISTRICT OF VERMONT**

**KEITH A. WERNER,**
**Plaintiff**

**v.** **No. 2:06-CV-174-WKS**

**J. C. PENNEY LIFE INSURANCE COMPANY,**
**STONEBRIDGE LIFE INSURANCE COMPANY,**
**J. C. PENNEY CORPORATION,**
**AEGON GROUP INCORPORATED,**
**JOHN DOES #1 THROUGH 6,**
**Defendants**

# PLAINTIFF'S FIRST AMENDED VERIFIED CIVIL ACTION

## I. INTRODUCTION

The Plaintiff seeks damages, and a Declaratory Judgment, from Defendants' violations of both federal and state statutes regarding the Unfair and Deceptive Trade Practices Act, 15 U.S.C. 45, et seq.; the Telemarketing and Consumer Fraud and Abuse Prevention Act of 1994, 15 U.S.C. 6101-08; the Mail and Wire Fraud statutes, 18 U.S.C. 1341 and 18 U.S.C. 1343; the Conspiracy and Attempt to Defraud Statutes, 18 U.S.C. 1349; the Telemarketing Fraud Act against Elderly Victims, 18 U.S.C. 2326; the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. 1961(5), 18 U.S.C. 1968 (a), (b), (c), and (d), and 18 U.S.C. 1964 (b) and (c); the Interstate Commerce clause, Article III, Section 2, Clause 1, to the United States Constitution; the common law and statutory torts of deceit, fraud, fraud-in-the-inducement, breach of

contract, promissory estoppel, negligence, unjust enrichment, and pursuant to contract law, breach of contract.

The instant action should also be construed as to constitute both a qui tam action and a Declaratory Judgment action, 28 U.S.C. 2201.

## II. JURISDICTION

This Honorable Court has jurisdiction pursuant to 15 U.S.C. 45, et seq., 15 U.S.C. 1601, et seq.; 18 U.S.C. 1339; 18 U.S.C. 1964; 18 U.S.C. 2325; 18 U.S.C. 3231; 18 U.S.C. 3237(a), (b); 28 U.S.C. 1331; 28 U.S.C. 1332 (a)(1) and (c)(1); 28 U.S.C. 1337; 28 U.S.C. 1367; the qui tam doctrine; and Article III to the United States Constitution.

## III. VENUE

Venue is conferred pursuant to 18 U.S.C. 1391 (c), (d); 18 U.S.C. 1964 (a), (c); 18 U.S.C. 1965 (a), (b), (d); 18 U.S.C. 3237; 28 U.S.C. 1332 (a)(1); 28 U.S.C. 2201; and the qui tam doctrine.

## IV. PARTIES

1. Plaintiff, Keith A. Werner, is the sole beneficiary and owner and holder in due course of the accidental death policy (the "policy") which is the subject of this action. He is a resident of Massachusetts and a citizen of the United States.

2. Defendant J. C. Penney Life Insurance Company ("JCPLIC") at all times relevant hereto is domiciled and has its home office in Rutland, Vermont, and has availed itself of the protection of the laws of Vermont.

3. Defendant Stonebridge Life Insurance Company ("SLIC") is incorporated in Vermont, has its home office at 29 South Main Street, Rutland, Vermont, and avails itself of the protections and benefits of the laws of Vermont.

4. Defendant J. C. Penney Corporation ("JCP") is a corporation whose home office is presently unknown but through investigation and discovery shall be made known. Upon information and belief JCP is incorporated with the United States.

5. Defendant AEGON Group Corporation ("AEGON") includes a variety of insurance companies under its corporate umbrella. SLIC is one of those companies. Upon information and belief, AEGON is based in the Netherlands.

6. Defendant John Doe #1 is the telemarketer who telephoned Mary Werner on May 5, 1997, attempting to sell the Policy.

7. Defendant John Doe #2 is the supervisor of John Doe #1.

8. Defendant John Doe #3 is the telemarketing entity that employs John Does #1 and #2.

9. Defendant John Doe #4 is the person with whom Mary Werner spoke on May 27, 1997, concerning the terms of the Policy.

10. Defendant John Doe #5 is the supervisor of John Doe #4.

11. Defendant John Doe #6 is the telemarketing entity that employs John Doe #4 and John Doe #5.

12. Upon information and belief all John Doe defendants are residents and citizens of the United States.

## V. FACTS

13. On May 5, 1997, Mary Werner, a senior citizen, received an unsolicited interstate telephone call from a JCPLIC telemarketer attempting to sell an individual accidental death insurance policy. The telemarketer represented the terms of the Policy included a one million dollar indemnity for <u>any</u> accidental death, regardless of any health problems. Mary Werner agreed to the terms of the Policy. There was mutual assent and a meeting of the minds.

14. By United States Mail Mary Werner received a certificate from JCPLIC purporting to describe the terms and conditions of the Policy.

15. The certificate contained confusing, contradictory, and ambiguous language that Mary Werner did not understand. In short, the aforesaid language was too sophisticated for a senior citizen with eight years of education plus two years of vocational training in hair styling, a lifelong housewife with no experience in business or legal matters.

16. Hence, after reviewing the certificate, on May 27, 2006, Mary Werner, via interstate telephone call, spoke to John Doe #2, who again represented to Mary Werner that the Policy provided a one million dollar indemnity for <u>any</u> accidental death, regardless of any existing health problems. John Doe #2 unequivocally and clearly promised, "There is nothing to worry about. You are fully covered for <u>any</u> accidental death, regardless of any health problems."

17. Mary Werner was so convinced by the aforesaid representations and promises that she agreed to add family coverage, naming her husband, George Werner, as the primary insured.

18. Mary Werner relied exclusively on the representations, promises, and guarantees of John Does #1 and 2 to purchase the Policy.

19. In consideration of the Policy all premiums were paid in a timely manner.

20. From May, 1997, through June, 2002, JCPLIC via wire transfers deducted payments from Mary Werner's credit card 72 times. Those funds were then wired via interstate transmission from JCPLIC to its financial institution.

21. From June, 2004, through June, 2004, Mary Werner via U. S. Mail sent checks 26 times to SLIC. SLIC deposited each of those checks via U.S. Mail into a financial institution.

22. The monies received, as mentioned in paragraphs 20 and 21, supra, were used to invest, directly or indirectly, to acquire an interest in or the establishment of operation of these respective enterprises that are engaged in, or the activities of which affect, interstate or foreign commerce.

23. The monies received, as mentioned in paragraphs 20 and 21, supra, were used by persons employed by or associated with these respective enterprises, which affect interstate and foreign commerce; and individuals received income, directly or indirectly, to use or invest, directly or indirectly, in the conduct of the affairs of these respective enterprises.

24. On May 8, 2004, George L. Werner choked to death on food. A proper and timely claim for indemnification was tendered.

25. The U. S. Postal Service delivered a letter to Mary Werner dated July 26, 2004, wrongly denying the indemnification claim. The letter from SLIC indicated that if

Mary Werner had any other information that would affect SLIC's decision to deny indemnification, the information should be mailed to SLIC.

26. By U.S. Mail Mary Werner did, in fact, send SLIC copies of the Emergency Medical Team Reports, the Nursing Triage Report, and a Report by two emergency room doctors who handled George L. Werner's case. All reports indicate that George L. Werner choked to death on food. SLIC continued to deny the claim despite proof positive by five health care professionals that the cause of death was due to choking on food.

27. On May 8, 2005, via U.S. Mail, Mary Werner notified SLIC that her son Keith A. Werner, the instant Plaintiff, was the sole beneficiary and owner and holder in due course of all claims, rights, and liabilities against SLIC concerning the Policy.

28. On June 10, 2005, the Plaintiff, via U.S. Mail, sent a Demand Letter to SLIC pursuant to the provisions of the federal and state requirements, demanding redress and tendering a settlement offer.

29. On or about August 9, 2005, the Plaintiff received a letter via U.S. Mail from SLIC refusing to tender a settlement or counter-offer. The letter also misrepresented facts concerning the agreed-upon terms of the Policy.

30. Pursuant to Vermont Business Corporation laws and the Articles of Merger on file with the Vermont Secretary of State's Office, SLIC and JCPLIC merged on March 12, 2002.

31. Pursuant to records on file with the Vermont Secretary of State's Office, SLIC has outstanding 2000 shares of common stock, par value $1,250.00 per share, all of which are owned by JCPLIC.

32. Per Articles of Amendment, date-stamped May 19, 2002, by the Vermont Secretary of State, the "Current name of the Corporation JCPLIC was amended. The Corporation is to be known by the name of SLIC." The Amendment was approved by "the Sole Shareholder of 20,000 shares of common stock of JCPLIC. John R. Camillo, Executive Vice President."

33. John R. Camillo is listed as the Executive Vice President of both SLIC and JCPLIC on the aforementioned Articles of Merger.

34. Further, the Articles of Amendment list J. Camillo of AEGON.COM as the contact person in the event there is a problem with the Articles of Amendment application.

35. AEGON Group, Inc., is listed on the New York Stock Exchange under the symbol "AEG"; hence its activities affect interstate and foreign commerce.

36. To date, and at all times relevant hereto, JCP acts on behalf of and in partnership with SLIC in selling insurance.

37. To date, and at all times relevant hereto, SLIC is authorized by JCP to sell its insurance products to JCP customers and, in fact, does do the same.

38. Per letter dated February 26, 2004, from SLIC to the Federal Trade Commission, SLIC indicated it undertakes multiple telemarketing efforts by use of both in-house and outsourcing to third-party telemarketing services.

39. Upon information and belief, at all times relevant hereto SLIC and JCP employees, as well as third-party telemarketing companies, hire telemarketers and train and supervise those telemarketers to sell insurance by reading from scripted programs, and such telemarketers are expected to follow the script word for word, even though the

telemarketing companies, telemarketers, and their supervisors know much of the script is deceptive. The coaches (supervisors) walk up and down the aisles smacking chairs and yelling for sales. The telemarketers work for nominal wages and are promised bonuses after making a specified amount of sales. The telephone calls are recorded and then monitored by the supervisors to determine how many sales each telemarketer has made, and also to chastise those who have not followed the script or saying whatever it takes to make a sale.

40. Over the last three years, across the United States insurance commissioners have upheld over 600 consumer complaints against SLIC.

41. A <u>very</u> brief investigation reveals the SLIC has had significant penalties imposed upon it for:

a. Violations found during an examination in New York, $5,000 (May 5, 1997)

b. Violations found during an investigation in Minnesota, $7,500 (September 22, 1997)

c. Penalty of $25,000 for use of telemarketers not licensed to transact business in Pennsylvania (November 15, 2000).

d. Penalty of $12,200 for issuing policies with rates that had not been filed and approved in the State of Washington.

42. All conditions precedent to the filing of the instant action have been satisfied.

VI. Claims

Counts 1 through 212: Federal RICO

The Plaintiff's first cause of action is pursuant to 18 U.S.C. 1964, The Racketeer Influenced and Corrupt Organization Act ("RICO"). A claim of Civil RICO under 1964 must allege a pattern of racketeering activity by a person or enterprise. "Racketeering activity" includes at least two predicate acts of racketeering activity, one which occurred after the commission of a prior act of racketeering activity (1961(5) involving 1341 (relating to mail fraud) and section 1343 (relating to wire fraud), 18 U.S.C. 1961 (A)(1). Under RICO a "person" includes any individual or entity capable of holding a beneficial interest in property, 1961(3). An enterprise includes any individual, partnership, corporation, or any other legal entity or group of individuals associated in fact, although not a legal entity, 1961(4).

Plaintiff alleges Defendants J. C. Penney Life Insurance Co. ("JCPLIC"), Stonebridge Life Insurance Company ("SLIC"), J. C. Penney Corporation ("JCP"), AEGON Group Incorporated ("AEGON"), and John Does #1 through #6 engaged in wire fraud two (2) times, via interstate telephone calls with Mary Werner, by fraudulently misrepresenting the terms of the Policy, and eighty (80) times when they deducted premiums from her credit card, and another eighty (80) times when each respective premium was wired via interstate transmission to their financial institutions between 1997 and 2002.

Plaintiff also alleges Defendants SLIC, JCP, AEGON, and John Does #1 through #6 engaged in mail fraud the twenty-four (24) times Mary Werner sent premium checks to SLIC, the twenty-four (24) times SLIC used the U.S. mail to deliver those checks to

their financial institution, and the two (2) letters sent by U.S. mail wrongly denying indemnification based upon additional fraudulent representations.

The complaint alleges mail and wire fraud under 1341 and 1343, and alleges: (1) the existence of a scheme to defraud; (2) the knowing or intentional participation in the scheme; and (3) the use of interstate mails and wire transmissions in furtherance of that scheme. Each and every time defendants misrepresented the terms and conditions of the Policy, and each and every time defendants took money from Mary Werner, is alleged to constitute a separate act of fraud. Thus, each act alleged is a separate violation of the mail and wire fraud statutes and thus each act is a separate and distinct predicate act. These acts establish a pattern and have the same or similar purpose, results, victims, methods of commission, and continuity.

VII. Counts 217 through 251: Federal RICO

The Plaintiff's second cause of action is pursuant to 18 U.S.C. 1963 (a), (b), (c), and (d), which provides, respectively, in pertinent part:

> (a) It shall be unlawful for any person who has received income derived, directly or indirectly, form a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, . . . in acquisition of any interest in, . . . or operation of, any enterprise which is engaged in, or the activities which affect, interstate or foreign commerce.
>
> (b) It shall be unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, ay interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . .

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

Defendants JCPLIC, SLIC, JCP, AEGON, and John Does #3 and #6 have violated subsection (a) of Title 18 U.S.C. 1961.

Defendants JCPLIC, SLIC, JCP, AEGON, and John Does #2, 3, 5, and 6 have violated subsection (b) of Title 18 U.SC. 1961.

Defendants JCPLIC, SLIC, JCP, AEGON, and John Does #1 through #6 have violated subsection (c) of Title 18 U.S.C. 1961.

All defendants in the instant action have violated subsection (d) of Title 18 U.SC. 1961.

Plaintiff re-alleges and incorporates by reference allegations 1 through 41 of Section V ("Facts") contained herein, <u>supra</u>.

VIII. <u>Counts 251 through 573: Frauds and Swindles</u>

Plaintiff re-alleges and incorporates by reference paragraphs 1 through 41 of Section V ("Facts") contained herein, <u>supra</u>. Plaintiff alleges Defendants JCPLIC, SLIC, JCP, AEGON, and John Does #3 and #6 have devised a scheme or artifice to defraud, and for obtaining money by false or fraudulent pretenses, representations, or promises, and for the purpose of executing such scheme or artifice have used the U.S. Postal

Service to take or receive therefrom the matter or thing obtained by fraudulent representations or promises, in violation of 18 U.S.C. 1341.

IX. Counts 573 through 737: Wire Fraud

Plaintiff re-alleges and incorporates by reference the claims in paragraph 1 through 4 of Section V ("Facts" and also Section VI, Plaintiff's First Cause of Action, relative to the Wire Fraud violations, 18 U.S.C. 1343, against each defendant jointly and severally.

X. Counts 737 through 753: Telemarketing Fraud

Plaintiff has alleged that Defendants JCPLIC-SLIC and John Does #1 through #6 have engaged in Telemarketing Fraud by means of a plan, program, or campaign conducted to induce the purchase of goods or services by one or more interstate calls in violation of 18 U.S.C. 2325.

XI. Counts 753 through 765: Telemarketing and Consumer Fraud Prevention Act of 1994

Plaintiff alleges that Defendants, JCPLIC-SLIC, JCP, and John Does #1 through #6, violated the Telemarketing and Consumer Fraud and Abuse Act of 1994 when their telemarketing company and telemarketers: (1) made a false statement to Mary Werner concerning a material fact; (2) the representers' knowledge that the representation is false; (3) the representers' intent that the representations would induce Mary Werner to act; and (4) Mary Werner's reliance on the representation caused her to act to her detriment, in violation of 15 U.S.C. 1601-08.

Further because Mary Werner was 71 years old at the time of the mail and wire fraud and conspiracy to commit said offenses, the defendants are subject to mandatory

enhanced penalties pursuant to 1826(B), Title 18, and 18 U.S.C. 2327 (b)(3) and (b)(4)(A).

XII. Counts 365 through 375: Unfair and Deceptive Business Acts

Plaintiff alleges all Defendants have engaged in Unfair and Deceptive Business Acts, in violation of 15 U.S.C. 45, et seq., when they engaged in all of the aforesaid acts contained in Counts 1 through 765, herein, supra, and also by preying upon an elderly, vulnerable woman inexperienced in business and legal affairs; using unconscionable acts to the detriment of Mary Werner; and taking advantage of her lack of knowledge, ability, experience, and capacity to a grossly unfair degree.

XIII. Counts 375 through 379: Breach of Contract

Plaintiff alleges an offer and acceptance, an oral agreement by JCPLIC-SLIC, John Does #1 and #2, consideration, and a breach of the contract. Defendants" agents were acting within the scope of authority conferred by JCPLIC-SLIC, and had authority of the principal to represent the principal.

XIV. Counts 375 through 385: Tort Arising from Contract

All Defendants are liable for the tort of deceit by materially misrepresenting facts to Mary Werner. Further, Defendants had a duty of fair and honest dealing with Mary Werner. That duty was violated. Liability may be proven even though the agents were expressly forbidden to commit the wrongful act, which fixes blame on the principal.

XV. Counts 385 through 393: Negligence

All Defendants except John Does #1 and #4 owed Mary Werner a duty of reasonable care in the hiring, training, and supervision of their officers, employees,

Case 2:06-cv-00174-wks Document 37-2 Filed 02/13/2007 Page 14 of 15

agent, and all those acting in concert. Defendants aforesaid violated that duty. Mary Werner sustained damages as a direct and proximate result.

XVI. Counts 393 through 395: Promissory Estoppel

Defendants John Doe #1 and #4 made a promise to Mary Werner upon which they should have reasonably expected to induce Mary Werner act. The promise of a one million dollar indemnification for any accident, regardless of health problems, did induce Mary Werner to act, to her detriment. Injustice can be avoided only by enforcement of the promise.

XVII. Counts 393 through 396: Unjust Enrichment

Plaintiff alleges that, via the premiums paid by Mary Werner, Defendants JCPLIC-SLIC and AEGON have received financial benefits, revenues, and profits as a direct result of the misrepresentations of the terms of the Policy. Defendants have profited and have been enriched contrary to equity and such benefits, revenues, and profits are unconscionable to retain because they are against public policy favoring fair competition and trade. Defendants should be forced to make restitution.

RELIEF SOUGHT

WHEREFORE, Plaintiff seeks the following:

A. Judgment against the Defendants, jointly and severally, in the amount of Three Million Dollars ($3,000,000.00);

B. General, special, and punitive damages;

C. All costs and fees associated with the prosecution of this action;

D. A trial by jury;

E. A Declaratory Judgment determining whether JCPLIC-SLIC, JCP, AEGON, each of their respective telemarketing companies, telemarketers, and supervisors thereof, are under a duty to indemnify and pay damages to the Plaintiff, and, if two or more are found liable, which entity is liable for primary coverage and which entity is liable for primary damages; and

F. Any other relief this Honorable Court deems appropriate.

Respectfully submitted,

Keith A. Werner
Keith A. Werner, pro se KW
Box 8200
Cranston, RI 02920

Dated: January 31, 2007

## VERIFICATION

I hereby verify that the facts contained herein are true, accurate, and correct, and those portions based upon information and belief are true, correct, and accurate to the best of Plaintiff's knowledge.

Keith A. Werner
Keith A. Werner, pro se KW

## CERTIFICATION

I hereby certify that a true copy of the within Plaintiff's First Amended Verified Civil Action was mailed by First Class Mail to defense counsel, John Paul Faignant, 36 Merchants Row, Box 6688, Rutland, Vermont 05702-6688, on this 10th day of February, 2007.

Keith A. Werner
Keith A. Werner, pro se KW