UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| KEITH A. WERNER | : | |
| | : | |
| v. | : | C.A. No. 07-82S |
| | : | |
| STONEBRIDGE LIFE INSURANCE COMPANY | : | |
| | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court on Defendant Stonebridge Life Insurance Company's ("Defendant") Motion for Summary Judgment. (Document No. 67). Keith A. Werner, pro se Plaintiff, did not file an objection to the Motion for Summary Judgment. Pursuant to 28 U.S.C. § 636(b)(1)(B) and LR Cv 72, the Motion has been referred to me for preliminary review, findings and recommended disposition. The Court has reviewed the Memoranda and supporting documentation submitted by Defendant, as well as Plaintiff's "Verified Civil Action," and has determined that a hearing is not necessary to resolve this Motion. For the reasons discussed below, I recommend that the Defendant's Motion for Summary Judgment (Document No. 67) be GRANTED.

**I. Facts**

Plaintiff initiated the current action seeking, inter alia, damages allegedly arising out of a breach of contract by Defendant. See Defendant's Statement of Undisputed Facts ¶ 1. (Document No. 69). Specifically, Plaintiff alleges that Defendant failed to pay out Loss of Life benefits upon the death of Plaintiff's father, George L. Werner ("Decedent"), to Plaintiff as "sole beneficiary" / "otherwise owner" / "holder in due course" of a Certificate of Insurance originally issued to

Decedent by J.C. Penney Life Insurance Co.[1] Id. ¶ 2. Plaintiff further alleges that Defendant, and/or others, "knowingly misrepresented material facts" to Mary Werner, Decedent's spouse, regarding the scope of insurance coverage, with the "intent to induce" Mary Werner to purchase unnecessary insurance coverage. Id. ¶¶ 5, 7. In addition, Plaintiff alleges that Mary Werner "rel[ied] upon aforesaid misrepresentations." Id. ¶ 5.

The Certificate of Insurance contains definitions of various terms relevant to this action. The term "Insured" is defined as "the Insured named on the Schedule Page" of the Certificate. Id. ¶ 11. The only individual specifically listed on the Schedule Page as an "Insured" is the Decedent. Id. ¶ 12. Moreover, the Certificate defines the term "Covered Person" as the "Insured and the Insured's spouse." Id. ¶ 13. The term "Covered Person" may apply to unmarried and dependent children of the Insured, but only up to the age of twenty-three. Id. ¶ 18. Finally, the term "beneficiary," in the event of the Insured's death, means the Insured's "spouse, if living." Id. ¶ 14.

Defendant filed its Motion for Summary Judgment on March 23, 2007. In response, on April 6, 2007, Plaintiff filed a Motion to Strike Defendant's Request for Permission/Authorization to File a Motion for Summary Judgment and all documentation supporting the Motion. (Document No. 70). Plaintiff's Motion to Strike did not address the merits of the Motion for Summary Judgment, but simply claimed that the Motion was "premature." Then, on May 9, 2007, Plaintiff requested an extension of time "of thirty days" to respond and object to "all matters relative to this case." (Document No. 73). In support of the Motion, Plaintiff stated that on March 17, 2007, he was

[1] The insurance policy issued to Decedent in 1996 was originally issued by J.C. Penney Life Insurance Co. to AT&T Universal Card Services Corporation, as policyholder. The policy was later amended, by endorsement effective July 1, 1998, to CitiBank (South Dakota), N.A., as policyholder, and, further amended, by endorsement effective January 1, 2002, to change the "Company" to Stonebridge. As such, Stonebridge is now named as Defendant. (Document No. 68, Attachment Nos. 2 and 3).

transferred from the custody of the Rhode Island Department of Corrections to the New Jersey State Prison, and that he had not yet received all of his legal materials from the Rhode Island Department of Corrections. The Court granted Plaintiff's request for an extension of time until June 15, 2007, however, Plaintiff did not file an objection or response. On March 30, 2007, the Court also granted Plaintiff leave to amend his Complaint and ordered him to file his First Amended Complaint by April 30, 2007. Plaintiff never filed or served an amended complaint. Instead, on May 11, 2007, Plaintiff appealed all of the Court's March 30, 2007 rulings on his pending motions, including the decision granting his Motion to Amend. (Document No. 77). His appeal was denied by the Court on May 21, 2007, and Plaintiff has not filed anything further in this case.

## II. Standard of Review

A party shall be entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997).

Summary judgment involves shifting burdens between the moving and nonmoving parties. Initially, the burden requires the moving party to aver "an absence of evidence to support the nonmoving party's case." Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). Once the moving party meets this burden, the burden falls upon the nonmoving party, who must oppose the motion by presenting facts that show a genuine "trialworthy issue remains." Cadle, 116 F.3d at 960 (citing Nat'l Amusements, Inc. v.

Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)). An issue of fact is material if it might affect the outcome of the suit under the governing law. Id. at 248. An issue of fact is "genuine" if it "may reasonably be resolved in favor of either party." Id. (citing Maldonado-Denis, 23 F.3d at 581).

To oppose the motion successfully, the nonmoving party must present affirmative evidence to rebut the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-257 (1986). "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, [or] unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Moreover, the "evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve." Id. (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)). Therefore, to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trialworthy issue by presenting "enough competent evidence to enable a finding favorable to the nonmoving party." Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993) (citing Anderson, 477 U.S. at 249).

## III. Discussion

This Court has liberally reviewed the Plaintiff's allegations and legal claims since they have been put forth by a pro se incarcerated litigant. See Haines v. Kerner, 404 U.S. 519, 520-521 (1972). However, even applying these liberal standards of review to Plaintiff's Complaint, the allegations set forth in the Complaint fail as a matter of law.

As the party invoking this Court's jurisdiction, Plaintiff must establish, as a threshold matter, that he has standing to prosecute the action. See Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004). In effect, Plaintiff must prove to this Court that he "is entitled to have the court decide the merits of the dispute or of particular issues." See id. (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). The Supreme Court has noted that there are both constitutional limitations on standing and prudential limitations on its exercise. See Warth, 422 U.S. at 498. The constitutional limitations on standing "derive from the language of Article III that provides, inter alia, that federal courts shall resolve disputes involving only 'Cases' or 'Controversies.'" Benjamin v. Aroostook Med. Ctr., Inc., 57 F.3d 101, 104 (1st Cir. 1995). Article III standing requires that the party who invokes a federal court's authority show, at the very minimum,"(1) injury-in-fact-an invasion of a legally-protected interest that is both concrete and particularized, and actual or imminent; (2) causation; and (3) redressability." Benjamin, 57 F.3d at 104 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

However, a plaintiff that satisfies the requirements of Article III may still lack standing under prudential principles by which federal courts "seek[] to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to federal courts to those litigants best suited to assert a particular claim...." See Gladstone Realtors v. Vill. of Bellwood, 441 U.S. 91, 99-100 (1979). In general, the prudential principles concern "whether the litigant (1) asserts the rights and interests of a third party and not his or her own, (2) presents a claim arguably falling outside the zone of interests protected by the specific law invoked, or (3) advances abstract questions of wide public significance essentially amounting to generalized grievances more appropriately addressed to the representative branches." Benjamin, 57 F.3d at 104.

To determine whether Plaintiff has Article III standing to bring the present suit in federal court, the Court considers the interpretation of the language of the insurance policy under Rhode Island law. Okmyansky v. Herbalife Int'l of Am., Inc., 415 F.3d 154, 158 (1st Cir. 2005) (in diversity action, substantive law of forum state applies). Under Rhode Island law, the terms of the Certificate of Insurance are construed according to the same rules of construction governing contracts. Pawtucket Mut. Ins. Co. v. Gay, 786 A.2d 383, 386 (R.I. 2001) (citing Textron, Inc. v. Aetna Cas. & Sur. Co., 638 A.2d 537, 539 (R.I. 1994)). The Court considers the four corners of a policy, viewing it in its entirety and affording its terms their plain, ordinary and usual meaning. Casco Indem. Co. v. Gonsalves, 839 A.2d 546, 548 (R.I. 2004) (quoting Am. Commerce Ins. Co. v. Porto, 811 A.2d 1185, 1192 (R.I. 2002)). "The test to be applied is not what the insurer intended by his words, but what the ordinary reader and purchaser would have understood them to mean." Pressman v. Aetna Cas. & Sur. Co., 574 A.2d 757, 760 (R.I. 1990) (quoting Elliott Leases Cars, Inc. v. Quigley, 373 A.2d 810, 812 (R.I. 1977)).

This Court may not deviate from the literal policy language unless the policy is ambiguous. Pawtucket Mut., 786 A.2d at 386 (citing Sjogren v. Metro. Prop. & Cas. Ins. Co., 703 A.2d 608, 610 (R.I.1997)). In addition, this Court will not engage in "mental gymnastics...to read ambiguity into a policy where none is present. If, however, a policy's terms are ambiguous or capable of more than one reasonable meaning, the policy will be strictly construed in favor of the insured and against the insurer." Id. (quoting Sjogren, 703 A.2d at 610).

Viewing the Certificate of Insurance in its entirety and affording its terms their plain, ordinary, and usual meaning, this Court finds that the Certificate is sufficiently clear and unambiguous such that an ordinary reader would understand that Plaintiff has no legally-protected

interest under its provisions. Plaintiff is not a party to the contract, nor is he an intended third party beneficiary, therefore he lacks standing to bring the present claims.

First, it is a well-settled rule that non-parties to an agreement do not have standing to bring an action to declare the validity or enforceability thereof. Meyer v. City of Newport, 844 A.2d 151 (R.I. 2004). The Decedent's Certificate carefully delineates the scope of insurance coverage, attaching precise meanings to the terms "Insured" and "Covered Person." The Decedent is clearly listed as the only Insured on the Schedule Page, and Plaintiff's age clearly exempts him from the general category of "Covered Persons," i.e., unmarried and dependent children under age eighteen (or under age twenty-three if a full-time student). Plaintiff was thirty-nine years of age when the insurance policy was obtained by his parents in 1997, and he was forty-six years of age at the time of his father's death in 2004. As the Certificate's definitions of the terms "Insured" and "Covered Person" are clear, unambiguous and incapable of more than one reasonable meaning, there is no need for this Court to deviate from the language of the policy. Simply put, Plaintiff is not a party to the Certificate as an "Insured" or "Covered Person;" any argument by Plaintiff that he has standing as such is completely foreclosed.[2]

An intended third party beneficiary may also seek to have rights declared under a contract. See Forcier v. Cardello, 173 B.R. 973, 984-85 (D.R.I. 1994). Rhode Island adheres to the Restatement (Second) of Contracts rule concerning third-party beneficiaries, which requires that the parties directly and unequivocally intend to benefit a third party in order for that third party to be

---

[2] Plaintiff alleges that his mother did not understand the Certificate because it was "too sophisticated for a senior-citizen, life-long housewife, with no experience in business or legal affairs." Verified Civil Action, ¶ 6. However, Plaintiff does not allege or offer any evidence that his mother has been adjudged incompetent. Further, even if that was the case, Plaintiff does not allege or offer any evidence that he has been appointed his mother's legal guardian or otherwise has legal authority to pursue claims on her behalf.

considered an intended beneficiary. Finch v. R.I. Grocers Ass'n, 93 R.I. 323, 330 (1961). The evidence before the Court clearly demonstrates that the Decedent did not directly and unequivocally intend to benefit Plaintiff. The terms of the Certificate provide that only Mary Werner, the surviving spouse of the Decedent, would benefit from the policy as a beneficiary in the event that a disbursement of Loss of Life benefits was made. Thus, Plaintiff is not an intended third-party beneficiary of the Certificate. Therefore, he has no legally-cognizable interest that would provide him with standing.

In the instant case, Plaintiff has failed to establish that he possesses Article III standing to pursue his claims.[3] As Article III standing is lacking, there is no need for this Court to address the prudential concerns raised by Plaintiff's apparent attempt to assert the rights of a third party not presently before this Court, namely his mother, Mary Werner.

## IV. Conclusion

Because there are no material facts in dispute regarding the terms of the insurance contract and Plaintiff lacks standing, Defendant is entitled to judgment as a matter of law. Thus, I recommend that Defendant's Motion for Summary Judgment (Document No. 67) be GRANTED and that the Court enter Final Judgment in favor of Defendant and against Plaintiff.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v.

[3] In addition to his breach of contract claim, Plaintiff asserts several other claims including fraud related to the insurance policy and failure to fairly investigate and settle the insurance claim. Plaintiff also lacks standing to pursue these claims as the victims of these offenses, if any, could only have been his parents.

Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
June 19, 2007